Norman Siegel for the Plaintiff Appellant to Meta Reyes. I'd like to reserve two minutes. May it please the Court. There are two central issues before the Court on Plaintiff's Appeal. First, could a reasonable jury find that a consumer's credit report is misleading and therefore inaccurate under Section 1681 E.B. of the Fair Credit Reporting Act, where the furnisher of the information instructed the reporting agency, in this case Experian, to delete and where the agency knew the account was inactive, unverifiable, and unauthorized? The second issue is whether a reasonable jury could conclude that a reporting agency created an unjustifiably high risk of harm to constitute willfulness under the Fair Credit Reporting Act, where the agency admitted that it failed to follow the instruction of an out-of-business furnisher, in this case Delbert, to delete the account and failed to follow its own policies related to the deletion of unverifiable and unauthorized information? On the record before this Court, both questions should be answered in the affirmative. The opinion of the lower court should be reversed and remanded. Let me start with the question of inaccuracy. There is no dispute the parties agree on what the standard is here. A report is inaccurate if it contains information that is misleading in such a way that it can be expected to adversely affect credit decisions. The central undisputed facts on the motion for summary judgment, and these were cross motions for summary judgment plaintiffs had moved on this theory. There are three of them. You have a large record. I'm going to try to refine it to three. First, Delbert instructed Experian to delete all of its accounts as of January 14, 2015, because it was going out of business. That's at the record at 1708. The next fact is Experian acknowledged that it was obligated to delete Delbert's accounts because the information would no longer be verifiable. In other words, if a furnisher goes out of business, information is not verifiable. Experian acknowledges that should not be reported. Did you have evidence in the record that the expectation is that if a report shows, if this line shows on the report, that it is in fact verifiable and that the people who are the executive creditor still looks at this as money at once as opposed to what was going on here? I think what was in the record was first the defendant's admission that the reason they deleted is because it is misleading and unverifiable information. And then on the other side of whether it could impact a credit decision, which perhaps gets to Your Honor's question. Sure, what was in the record was that there was at least 30 inquiries into our client's record that at least one credit report was issued during the time that Experian was instructed to delete this information. And we had expert testimony that in fact the existence of this record that Experian acknowledges should have been deleted impacted how people making credit decisions would evaluate her credit. And so I think the critical fact there in terms of their admission and the reason that Experian says you must delete this information, its corporate representative testified in language that really tracks the Fair Credit Reporting Act. She said, this is at page 1130, if furnishers go out of business, we can't keep their data on file. Experian can't keep it on file because in the interest of the consumer, Experian can't verify it at that point. And so the three, these three points, one, Delbert instructs Experian to delete in January of 2015, Experian acknowledging that it must delete, and then amazingly Experian telling Delbert it did delete. And when Delbert said we're going out of business and we're stopping all business with you, Experian confirmed in this email exchange, 1708 through 1710, that one of the things that we are terminating is the reporting. And of course to provide this maximum possible accuracy that the Fair Credit Reporting Act demands, that's in fact what they had to do. So Experian responded in their briefs suggesting that your cause of action is really based upon their voluntary decision to eliminate all of these loans, which related to the tribal loans, et cetera. So, and that goes well back before January of 2015. What you are arguing then has nothing to do with their voluntary decision to eliminate all of those loans. Your claim, and I want to ask you if this is exactly what you're arguing, your claim is limited to Delbert saying we're out of business, eliminate all of our, delete all of our loans, and then 12 months go by before Ms. Reyes is gone, and 16 months go by before all the rest of Delbert loans. So you are not arguing broader about what Experian did in regard to the loans generally. You are just responding to what Delbert did and their refusal or their denial of eliminating those loans. Precisely, Judge Sessions. That's exactly what the theory is, and that's what we move for summary judgment on. This is a dense record and a big fact pattern. It is true that because these loans originated by Western Sky were under such intense scrutiny, and several states had imposed on both Cash Call and Delbert the need to eliminate those loans, that Experian was in fact putting through requests to delete those loans, was managing to do it in those instances, and then made a decision to delete all of them that predated what the claim is here before this Court, and that is, yes, Judge Sessions, when they get this instruction from Delbert, their obligation is triggered, and they acknowledge it. This does not spring from any pragmatic business decision, which we know Experian has been clinging to here. No, but they say they dropped the ball. That's it. They dropped the ball. They say both. They say both. Dropping the ball goes to the willfulness of the conduct. We say it's more than dropping the ball. As Your Honor pointed out, it's 15 months of ball dropping where you're getting scores, you're getting literally thousands of complaints from consumers that have a Delbert trade line that was supposed to be deleted as instructed by the Furniture. This is a putative class action. It is. How many people do you think are there in this putative class who suffered harm to their credit reputation as a result of whether it was dropping the ball or bureaucratic misconduct or whatever it might have been? 125,000. And how do you know that? Discovery. So we moved with our motion for partial summary judgment on this issue that Judge Sessions raised. We also moved for class certification, and so we had that information obviously to satisfy the numerosity standard. So this was a massive problem at Experian. Experian was well aware of it. The dense record you have is Experian continuously, continuously fumbling the ball here to execute on this instruction. Is it undisputed that it was about 124,000 accounts that were finally deleted in April and May of 2016? It is. It is disputed? It's undisputed. Undisputed. Yes, Judge Bennett. I thought there were seven that were done afterwards or something. There may have been a tail, but that is not obviously the central concept of this case here in terms of a few more that were deleted after that. I'd like to... I... Oh, I'm sorry. Well, maybe I should ask the other counsel because I'm not quite sure I understand how the mechanics of the order to delete versus the failure to delete works, but I'll ask the defense counsel that question. Thank you, Your Honor. I'll save the remainder of my time. Thank you. May it please the Court, Mayor Fetter for Experian. I think probably I should start with the things that counsel says are undisputed but are not only disputed but flatly contrary to the record because that seems to be... I mean, there are legal arguments beyond that, but the whole premise of this argument is wrong in a couple of ways. One is the notion that Delbert instructed Experian to delete all of its data. I invite you to look at the record. That's based on an email that actually doesn't say anything like that. You can find it at page 1708 in the excerpts, and then it's again later at 2681, the same email. They said they're discontinuing all services provided by Experian. That's the stuff they're buying from Experian. They buy credit reports. They buy information from Experian. Experian doesn't... Experian's reporting of someone's data is not a service Experian is providing to them. That's a service Experian is providing to the lenders who want to use the data. It's correct, though, that at that point when Delbert went out of business, Experian could no longer verify anything with Delbert. Is that correct? Actually, there's nothing in the record that says that. To the extent that you can tell from the record, it suggests maybe the contrary. I say maybe because you can see the stuff about the ongoing Georgia litigation. That went on well past this point. But if Delbert went out of business and doesn't need services, then doesn't that mean that the people who show that they, on your reports, that they owe money to Delbert, there's no way of verifying that? There's no way of collecting that, and perhaps that means they don't owe the money to Delbert. Well, except that you look at the stuff in the record about the Georgia litigation... I thought you admitted that it was your client's company policy to delete Delbert. Isn't that admitted? It's admitted that... At that point, the directive went out to delete all information about Delbert? Correct. And that wasn't done. And that was my question, like, how does that happen? Okay. But there are two parts of that, okay? I think it's very important to talk about the first part, which is, again, counsel said that the defense admitted that the information is deleted because it was misleading and unverifiable. Again, there is a record on how the decision came about to delete all of this stuff. In fact, it was not that. It was a decision, in fact, before they went out of business, not because anything was unreliable, but because... And I'm sorry, I should give you the citations on that as well. So this was... I'm sorry, this is, I believe, Kim Cave. No, no. I'm giving you the wrong... I'll give you the citation, but what the record shows here, 2694 is what I'm looking for. What the record shows is that they had all these lawsuits going on against Cash Call Delbert over these Western Sky loans. Sort of one state at a time, some of the states, Cash Call was getting orders against them, you've got to stop reporting the stuff from these states, and they were going on a state-by-state basis. Ultimately, Experian decided that this process is fraught with difficulties of trying to take out state-by-state. We're ultimately going to do it across the board, not, again, because anything is unverifiable, but because you've got this problem where these lawsuits are going on and you're doing it piecemeal. Did you put anything in the record below that after Delbert sent these emails that you've described at ER 1708, etc., that did you put any evidence in the record that any of the information after that point was verifiable from Delbert? No. No, that's why I said I don't think that the record reflects it either way. I think what happened there with Experian is they believed that they had already decided to get rid of all of it, and this gets to the second part of your question. Right, just two months earlier, they decided they'd delete all of the Delbert. Right. But, okay, I mean, you understand why I think it's important to point out that. The inference is that you're deleting it because otherwise you're not following reasonable procedures to assure the maximum possible accuracy of the information concerning the individual. Again, I would invite you to look at 2694. There are other places as well, but. I'm talking about meeting the standard to which your company is. Right. Must comply under this. But part of the hesitation in deleting it was that actually they were concerned it would hurt. They did a study that it would actually hurt more consumers than it would help to delete it because you had all these consumers who were developing good payment histories. Yes, yes. With respect to Ms. Rays herself, you deleted her positive credit history, and you didn't delete this negative credit history, which couldn't a reasonable jury find that that was inaccurate or misleading? No, Your Honor, I don't think so. So let me address first your question about how it happened that it didn't get deleted and then explain why a jury certainly could not conclude that. Okay. How did it happen? Because I'm sure this is of interest to ordinary consumers everywhere. Look, I mean, I certainly am not going to defend this as having ultimately been a shining moment in the way they handled this. The employee who was responsible for deleting it, each lender has a bunch of different what are called subcodes, and there were various subcodes. Some Delbert alone, some cash call alone, some Delbert from cash call, et cetera. And the person responsible for this, and she explains it in, if you look at 2676. She says she dropped the ball, right? She did drop the ball. But, I mean, there were 356,000 accounts, right? Or more or less. Yeah. There were hundreds of thousands of accounts. This was this one employee's responsibility, and nobody at the company figured it out for a year, 14, 15 months? It certainly appears that, I don't know, eventually they figured something out and got it fixed. So, counsel, one of your arguments is that the district court was correct in finding as a matter of law that there was no willfulness, correct? Correct. So why don't you spend a little bit of time on that? Okay. I do hope you'll give me at least after that at least a minute to explain why no reasonable jury could find this to be misleading under the Ninth Circuit standard, because obviously that's a key issue here, but. Go ahead. On that? Yeah, what's the Ninth Circuit standard? The Ninth Circuit standard is that either. . . Capable of influencing. Sorry? The Ninth Circuit standard is whether it's capable of influencing the decision maker's decision. Well, yeah, misleading in a way likely to affect a lender. . . Capable of influencing. Right. I guess this is case law. Right. And so, first of all, it wasn't misleading at all, because if you look at what was reported, I mean, again, there's plenty in the record, including their experts, saying it is quite common for a loan that is transferred or purchased to have part of the history report and not other parts. Lenders are used to that. Here, when you look at what was reported, it says right at the bottom of it, purchase from cash call. If you look, it's at 1758 of the record. This trade line that showed the accurate Delbert data said purchase from cash call, Inc., so that anyone looking at that knows that there was prior history that's not there on the report. Now, it doesn't mean that they know what the prior history was, and sometimes things that aren't reported, for some consumers it will help them, for others it will hurt them, but it has to be misleading to them, and seeing something where they know that there's more historical data that they don't have is not in any way misleading. Although one of their arguments is that because this is being listed, that it means both that the furnisher wants it reported and that when it shows delinquent, it's capable of being brought current, and they argue neither of those things is possible, and just with regard to those two things, it's misleading. And, Your Honor, on that, that is, first of all, pure assertions of counsel in papers. There is nothing in the record indicating the truth of either aspect of that. In fact, nor is there anything indicating that either as to Ms. Reyes or more generally, there's nothing indicating that she couldn't have paid it off again. The record shows that the Georgia ---- How could she have paid it off if Delbert was out of business? Well, because the record shows that the Georgia litigation, Delbert continued to be part of that litigation, and it indicates that the loans were still ---- they were still trying to collect on the loans. They were not making any more loans. It's not ---- the record doesn't say exactly what they meant by out of business, but what we do see is they were still trying to collect loans. But the other thing is that the notion that a lender ---- that this is something that is going to be material to lenders where it shows that this is charged off, right? They call this reporting as an open account. It's not an open account. It's reported as a charged off account, right? The lender has written it off. And there is absolutely nothing in there other than assertions of counsel to support the idea that a lender is going to care, that in theory this plaintiff who chose not to pay because she thought the loans were illegal actually would have wanted to, or that the lender looks at the charge off differently based on active or inactive. It's pure assertion.  Judge Bennett was talking about the men's race standard and in civil cases such as actions under the FRCA, the Supreme Court has said that the phrase willfully fails to comply reaches reckless FCRA violations and it distinguishes the term willfulness in the criminal law. Couldn't a jury find that dropping the ball was reckless behavior by a credit reporting agency in these circumstances? Isn't there ---- I don't think that's a question that can be decided as a matter of law, in other words. How do you respond? I think that the district judge was right here. As their expert recognized, forget about his conclusions about whether it was willful or not. He recognized these were mistakes, right? Somebody made a mistake. Was it negligence or was it reckless? I mean, I don't know. Recklessness. I mean, I'm just saying, isn't that something a jury should weigh? I mean, when you have a low-level employee entering the wrong data codes, now, should that be allowed to happen? Does that suggest that you need more procedures? As soon as you have some backup or safeguards or supervision or something like that. But what you're describing there, even that, is negligence. There isn't, for a reckless failure to supervise, you would at least need something indicating that at higher levels of the company, that there is some awareness of some issue to be addressed. So you don't think recklessness can be proven when you have 350,000 accounts, one employee fails to do something over a course of 15 or 16 months and that there are no procedures in place to figure that out, that there's no evidence from which a jury can conclude that that's more than mere negligence as a matter of law? I think described at that level of abstraction, I wouldn't say it. I would say based on the way it happened here is reflected in the record. I do think that as a matter of law, screw-ups are not recklessness. We're at summary judgment here, and the assessment obviously is impacted, that you have to consider the evidence in the light most favorable to the non-moving party. In this particular case, when you're requesting summary judgment, that's obviously your opposing party. And in the light most favorable to that party, don't you think that a jury could actually interpret this 15 months and all of these loans, when in fact they're representations by Delbert that they're going to close down these accounts? Don't you think that that's enough at least to get to a jury? Actually, I mean, I don't want to be picky about it. I don't think they're representations by Delbert that they're going to close down the accounts. But I don't want to fight you on this because I think you're, I mean, look, certainly I don't agree with the conclusion, but the main issue here is the FCRA doesn't create a cause of action for reporting accurate information that, because you're only reporting the last eight months of accurate information and the preceding 12 months are gone, when there is no evidence in the record of that any lender would be able to report accurate information. Taking any of that would either be misled by it or would consider it significant. All right, counsel, you're really well over your time. Thank you. And I'll give you a minute to make some final points. Thank you, Your Honor. Just three quick points. First is, if you go back and read again this very limited section of the record, 1708, where the request comes in through 1710, it's unambiguous that, one, data reporting is among the things that Experian is asking, I'm sorry, that Delbert is asking Experian to stop. Second, in Ms. Cheatham's response, she acknowledges data reporting, and the code for data reporting is among those things that will be deleted. And then on this last exchange, absolutely in the record, there is a confirmation on January 21st, 2015, in this exchange, where Ms. Cheatham says this request has been completed. They absolutely told the furniture that the information had been deleted, and yet 15 months later, still not. So we do think the record is clear. Secondly, with respect to the quality of this information, remember, the statute requires maximum possible accuracy. Experian tells people, like Ms. Reyes in their credit report, that delinquent accounts are the type that Experian thinks lenders are likely to consider negative when considering credit. That's what they claim is the reason they report it, because it could affect credit decisions. Absolutely. And so when the furnisher says, stop, do not report, delete, and Experian says, we understand we need to delete because it's unverifiable, and then tells the furnisher we have deleted it, and yet it remains on 125,000 people's reports, there is absolutely a misleading representation there that Experian knows is likely to impact credit decisions, the standard. Last word on willfulness. I see I'm over. May I just conclude briefly? Include briefly. It's an objective standard. The district court respectfully said it was his view that there was no recklessness here. It can't be that a single employee, that they can isolate a single employee, put that employee in a box and have no oversight and escape a potential willfulness claim. All of these claims, based on the record, should go to a jury, and we ask that the court reverse remand. Thank you. Thank you, counsel. Reyes v. Experian Information Solutions will be submitted.
judges: Wardlaw, Sessions, Bennett